**NATHAN KIMMEL, INC.; Nathan Kimmel, LLC; KNF Corp., formerly known as Kennedy Nylon Film Corp., Plaintiffs–Appellants,**

v.

**DOWELANCO, Defendant–Appellee.**

No. 99–56746.

United States Court of Appeals, Ninth Circuit.

Submitted June 6, 2001.*

Filed July 10, 2001.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Federal Rules of Appellate Procedure 34(a); Ninth Circuit Rule 34–4.

Joel R. Bennett, Bennett & Fairshter, LLP, Pasadena, California, for the appellants.

Dean T. Barnhard, Barnes & Thornburg, Indianapolis, Indiana, for the appellee.

Before: HUG, TROTT, and W. FLETCHER, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

The district court dismissed Nathan Kimmel, Inc.'s (Kimmel) complaint on the ground that Kimmel's state law claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136–136y. Kimmel appeals this decision by the district court. We have jurisdiction pursuant to 28 U.S.C. § 1291, and AFFIRM in part and REVERSE in part.

## DISCUSSION

### 1. Background

Defendant–Appellee DowElanco is the manufacturer of Vikane, a pesticide used to exterminate termites. Vikane is regulated by the Environmental Protection Agency ("EPA") and is required to carry an EPA-approved label. The Vikane label contains, among other things, instructions on the proper use of the pesticide. The use of Vikane in a manner inconsistent with its label is a violation of federal law.

Vikane is commonly used to fumigate areas containing food and medicine. The Vikane label states that when fumigating such areas, all food and medicine should either be removed from the area or placed in special protective bags. DowElanco owns the trademark for one such protective bag, known as Nylofume. DowElanco has licensed the use of the Nylofume trademark to M & Q Plastics Products ("M & Q"), which manufactures and sells the Nylofume bags. Prior to 1993, DowElanco conducted tests on several brands of protective bags to determine their effectiveness during a Vikane fumigation. Of the various bags tested, the Nylofume bag produced by M & Q allegedly was proven to offer the *least* protection.

From 1993 to 1996, the Vikane label read, in part:

> Food, feed, drugs, and medicinals … must be removed from the fumigation site or sealed in highly resistant containers such as glass, metal or double bagging with nylon polymer bags (such as Nylofume, Fumebag, or Reynolon HRF. These protective bags are available only from distributers of this product.)

This label did not restrict the use of other nylon polymer bags not expressly listed on the label.

In early March of 1994, Kimmel informed DowElanco of its intention to begin manufacturing nylon polymer bags for use with Vikane. The bag produced by Kimmel, which is similar to the Nylofume bag, is called the NK–6 bag. DowElanco allegedly responded to Kimmel's announcement by stating that Kimmel would "never be selling bags and [would] not … be in the bag business much longer" because "you guys have really been a thorn in our side."

Immediately thereafter, on March 7, 1994, DowElanco informed M & Q that "[d]ue to some recent discrepancies, our product specimen label for Vikane gas fumigant will now list Nylofume bags as the only option for bagging food during a fumigation." The alleged "discrepancies" were never identified. Three days later, Dow-

Elanco wrote a letter to Kimmel stating that because of "the approval of the EPA of certain bag types tested ... [and] Dow-Elanco's liability associated with the Nylofume bag, they will remain the only approved bag on the label."

Approximately one month *after* issuing this statement to Kimmel, DowElanco applied to the EPA to change the Vikane label to require the use of *only* Nylofume bags during a Vikane fumigation. DowElanco informed the EPA that this proposed change was predicated on DowElanco's conclusion that the Nylofume bag had "proven to be the most reliable" and had "proven to be best suited for this use," a conclusion that allegedly was not only unsupported, but actually contradicted by DowElanco's testing. The EPA approved DowElanco's proposed amendment to the Vikane label in October of 1996, thereby prohibiting the use of Kimmel's NK–6 bags during Vikane applications. On January 1, 1998, the State of California began citing and fining any fumigator using non-Nylofume bags during Vikane fumigations.

Kimmel subsequently sued DowElanco, alleging that DowElanco knowingly submitted false and misleading statements to the EPA regarding the reliability of the

Nylofume bag for the purpose of procuring a Vikane label that would exclude Kimmel from the nylon polymer bag market. DowElanco moved for summary judgment, which was denied by the district court. The district court did, however, order Kimmel to amend certain portions of its complaint. Kimmel then filed an amended complaint seeking (1) injunctive relief pursuant to California Business and Profession Code § 17200[2], and (2) damages for intentional interference with a prospective economic advantage. DowElanco moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), asserting that both causes of action are preempted by FIFRA. The district court granted DowElanco's motion to dismiss, stating that this result was compelled by our holding in *Taylor AG Indust. v. Pure–Gro*, 54 F.3d 555 (9th Cir.1995).

## 2. FIFRA Preemption

The gravamen of Kimmel's state damages claim is that DowElanco knowingly submitted false information to the EPA to obtain an amended Vikane label prohibiting the use of NK–6 bags during Vikane fumigations.[3] On appeal, Kimmel chal-

---

**2.** The only relief sought by Kimmel under Section 17200 is injunctive relief. Specifically, Kimmel asks that DowElanco be ordered to change its label to permit the use of the NK–6 bag during Vikane fumigations. As conceded by Kimmel in its opening brief, however, "an injunction imposed against a manufacturer to change its label would represent a state-mandated labeling requirement and would therefore be preempted." Therefore, the district court's dismissal of this claim is *affirmed.* The remainder of this opinion will focus exclusively on Kimmel's common law damages claim for intentional interference with a prospective economic advantage.

**3.** As its threshold argument, DowElanco asks that we dismiss this appeal due to the procedural inadequacies of Kimmel's brief. We do

not believe that such a severe sanction is warranted in this case. Our conclusion is based upon (1) Kimmel's efforts to rectify its procedural blunders, (2) the fact that the uncured defects in Kimmel's brief—including its omission of the appropriate standard of review and its failure to provide a summary of *its argument—do not excessively hinder our* ability to resolve this appeal, and (3) the meritorious nature of Kimmel's appeal. *See Han v. Stanford Univ.*, 210 F.3d 1038, 1040 (9th Cir.2000). (dismissing an appeal where "Plaintiff's counsel failed to follow [the appellate] rules and, although he was put on notice that his brief was noncompliant, he made *no attempt* to correct the glaring deficiencies in the brief" (emphasis added)); *N/S Corp. v. Liberty Mut. Ins. Co.*, 127 F.3d 1145, 1146 (9th Cir.1997) (concluding that even though the plaintiff had committed egregious viola-

lenges the district court's conclusion that this claim is preempted by FIFRA.

### a. *Standard of Review*

■ We review de novo both a dismissal for failure to state a claim under Rule 12(b)(6) and the district court's decision regarding preemption. *See Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir.2000).

### b. *Analysis*

■ We begin our analysis with a brief review of the fountainhead of federal preemption law, the Supremacy Clause of the Constitution. U.S. Const. art. VI, cl. 2. The Supremacy Clause provides that any state law conflicting with federal law is preempted by the federal law and is without effect. *Id.* State regulation established under the historic police powers of the states is superseded by federal law only when preemption is the clear intent of Congress. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Thus, the intent of Congress is the ultimate touchstone in a preemption case. *Id.* While preemption can be either express or implied, *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), we need not divine an implied congressional intent to preempt state laws when Congress has included in the enacted legislation a provision explicitly addressing that issue. *Cipollone*, 505 U.S. at 517, 112 S.Ct. 2608.

The federal law claimed by DowElanco to preempt Kimmel's state damages claim is FIFRA. FIFRA is a comprehensive regulatory scheme aimed at controlling the use, sale, and labeling of pesticides. *See Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 601, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). FIFRA requires, among other things, that manufacturers register a pesticide with the EPA before introducing it into the market. As part of this registration process, manufacturers must submit to the EPA a proposed label for approval. *See* 7 U.S.C. § 136a(c)(1)(C) (West 2000). FIFRA specifically prohibits the knowing falsification of any application for the registration of a pesticide, including the falsification of "any information relating to the testing of any pesticide ... including the nature of any ... observation made, or conclusion or opinion formed." *Id.* at §§ 136j(a)(2)(M), 136j(a)(2)(Q).

In section 136v of FIFRA, Congress expressly delineated the extent to which the states can regulate pesticides:

(a) In General

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect *any requirements* for labeling or packaging *in addition to or different from* those required under this subchapter.

7 U.S.C. § 136v ("section 136v") (emphasis added). Because section 136v "provides a reliable indicium of congressional intent with respect to state authority," we need not engage in any implied preemption analysis. *Cipollone*, 505 U.S. at 517, 112 S.Ct. 2608 (internal quotation omitted). Rather, we need only identify the domain expressly preempted by the statutory language of FIFRA.

tions of the appellate rules, "we would feel most uneasy [about dismissing the case] if this

were an otherwise meritorious appeal").

To do so, we must: (1) answer the overarching question of whether a state damages action constitutes a "requirement" under section 136v(b); and if it does, (2) resolve the more pointed question of whether Kimmel's damages action would impose requirements "different from or in addition to" those imposed by FIFRA. Answering these questions requires a basic understanding of existing case law from the Supreme Court and the Ninth Circuit, as well as a fundamental understanding of the EPA's interpretation of section 136v.

### i. Relevant Case Law From the Supreme Court and the Ninth Circuit.

The Supreme Court first spoke to the issue of whether state damages actions qualify as state-imposed "requirements" for purposes of preemption in *Cipollone*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407. The precise issue addressed in *Cipollone* was whether the Public Health Cigarette Smoking Act of 1969 ("the 1969 Cigarette Act") preempted state tort actions premised on claims for failure to warn and intentional misrepresentation. *Id.* at 508–09, 112 S.Ct. 2608. The preemption provision in the 1969 Cigarette Act precluded states from imposing any "requirement or prohibition based on smoking and health . . . with respect to the advertising or promotion of any cigarettes." 15 U.S.C. § 1334(b). A four-Justice plurality interpreted the term "requirement" to encompass certain state damages actions, stating:

> The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules. As we noted in another context, [state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can

be, indeed is designed to be, a potent method of governing conduct and controlling policy.

*Id.* at 521, 112 S.Ct. 2608 (internal quotations omitted).

Applying this rationale, the Court concluded that to the extent the plaintiff's failure to warn claim required a showing that the cigarette manufacturers' advertisements should have included additional or different warnings, those claims were preempted. *Id.* at 524, 112 S.Ct. 2608.

The Court reached the opposite conclusion with respect to the plaintiff's intentional fraud claim, however, stating that this claim did not threaten the 1969 Cigarette Act's purpose of avoiding nonuniform labeling requirements. *Id.* at 514, 529, 112 S.Ct. 2608. The Court based this holding on the notion that "[s]tate-law prohibitions on false statements of material fact do not create 'diverse, nonuniform, and confusing' standards. . . . [Rather,] *state-law proscriptions on intentional fraud rely only on a single, uniform standard: falsity.*" *Id.* at 529, 112 S.Ct. 2608 (emphasis added).

Three years later in *Taylor*, we relied heavily on *Cipollone* in concluding that FIFRA preempts state damages actions predicated on a manufacturer's alleged failure to warn. *Taylor*, 54 F.3d at 559. The plaintiffs in *Taylor* sued the manufacturers of two types of defoliants for failing to place adequate warnings on their labels disclosing the dangers posed by the chemicals. The defendants moved for summary judgment, arguing that the plaintiffs' claims were preempted under section 136v(b) of FIFRA. The district court granted the motion, and we affirmed.

We began our analysis in *Taylor* by noting the striking parallels between the preemption provision in section 136v(b) of FIFRA and the preemption language contained in the 1969 Cigarette Act. *Id.* Find-

ing no meaningful distinction between the two statutes, we adopted the central inquiry employed by the Court in *Cipollone* for determining whether a particular cause of action is preempted—namely, does the "legal duty that forms the basis for the claim impose[ ] a state labeling requirement that is different from or in addition to the requirements imposed by FIFRA[?]" *Id.* (citing *Cipollone,* 505 U.S. at 523–24, 112 S.Ct. 2608).

Working from this foundation, we determined that the plaintiffs' argument in *Taylor,* boiled down, was that the chemicals' labels—which had been approved by the EPA as providing sufficient warnings under FIFRA—inadequately warned users of potential risks posed by the chemicals. Thus, to prevail on their claims, the plaintiffs would have been required to prove that the EPA should have demanded labels containing warnings in addition to or different from those required by FIFRA. We concluded that such a claim fell squarely within the preemptive shadow of section 136v(b). *Id.*

Shortly after our decision in *Taylor,* the Supreme Court revisited the issue of whether a federal statute prohibiting states from imposing certain "requirements" preempted state damages actions. *See Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The plaintiff in *Medtronic* brought a state damages action against the manufacturer of his pacemaker asserting, *inter alia,* claims of negligence and strict liability. *Medtronic,* 518 U.S. at 481, 116 S.Ct. 2240. Relying on *Cipollone,* the manufacturer maintained that the plaintiff's claims were preempted by the Medical Device Amendments ("MDA"), which prohibits states from establishing "any requirement[ ](1) which is different from, or in addition to, any requirement applicable under this chapter to the device...." 21 U.S.C. § 360K(a). Assuming a different posture

than it had taken in *Cipollone,* the Supreme Court rejected the defendant's argument as being "not only unpersuasive," but "implausible." *Id.* at 487, 116 S.Ct. 2240. The Court concluded that section 360K(a) of the MDA "simply was not intended to pre-empt most, let alone all, general common-law duties enforced by damages actions." *Id.* at 491, 116 S.Ct. 2240. Specifically, the Court held that the preemption language in the MDA precluding the imposition of requirements "in addition to or different from" those contained in the MDA did not bar claims imposing a duty "that merely duplicate[s] some or all" of the federal labeling requirements imposed by the FDA, the agency charged with administering the MDA. *Id.* at 492, 494–95, 116 S.Ct. 2240.

ii. *The EPA's Interpretation of FIFRA.*

Since our holding in *Taylor,* the EPA has announced its interpretation of section 136v(b). In an amicus curiae brief filed with the California Supreme Court in *Etcheverry v. Tri–Ag Service, Inc.,* 22 Cal.4th 316, 93 Cal.Rptr.2d 36, 993 P.2d 366, 374 (2000), the EPA argued that FIFRA was not intended by Congress to preempt *any* state common law damages actions. *Id.* at 374–75. The EPA based its broad reading of the preemptive language in FIFRA on several factors, including:

(1) that Congress did not establish a federal damages remedy to replace state damages remedies and that preemption would thus leave individuals injured by pesticides largely, or entirely, without a remedy; (2) that Congress drafted section 136v(b) against the existing regulatory background of FIFRA, which, since 1949, has included a well-developed body of federal pesticide labeling requirements, suggesting that Congress only intended to prevent states from impos-

ing similar labeling requirements; (3) *that Congress drafted section 136v(b) against the existing common law background, which, since 1884, has authorized the imposition of damages for false or inadequate statements regarding pesticides;* [and] (4) that the voluminous legislative history of section 136v(b) overwhelmingly demonstrates that Congress was exclusively concerned with preventing conflicting state regulations of pesticide labeling by state administrative agencies and that no member of Congress has ever mentioned an intent to preempt state damages actions....

Amicus Brief for the EPA (emphasis added). The EPA has not to our knowledge filed an amicus curiae brief in any of the nine federal circuit courts of appeals that have addressed this issue. *Etcheverry,* 93 Cal.Rptr.2d 36, 993 P.2d at 374.

### iii. Whether a state damages action constitutes a "requirement" under section 136v(b).

Our initial task in this appeal is to choose between two interpretations of the word "requirements," as that word is used in the express preemption language of FIFRA. Riding on the coattails of the EPA, Kimmel argues that Congress did not intend for the term "requirement" in section 136v(b) to preempt any common law damages claims. Kimmel posits that FIFRA's preemption of state-imposed labeling "requirements" extends only to direct commands imposed by legislative or administrative bodies. At the very least, Kimmel argues, we should defer to the EPA's position on this matter and hold that no state damages claim is preempted by FIFRA. DowElanco, on the other hand, claims that the word "requirements" should be read to encompass both positive enactments of law as well as common law damages claims, and that the EPA's position to the con-

trary would frustrate Congress's intent to create uniform labeling standards.

We decline to endorse either position at this time. As discussed below, it is unnecessary in this case for us to decide whether a common law damages action would impose a "requirement" under section 136v(b) of FIFRA. Thus, any discussion or conclusion regarding this issue would be dictum. We therefore leave for another day the issue of whether Congress intended the word "requirement" to encompass state law damages actions.

### iv. Kimmel's claims are not preempted because they do not impose a duty "in addition to or different from" those imposed by FIFRA.

■ Section 136v(b) does not preempt *all* state-imposed pesticide labeling requirements. Instead, FIFRA purports only to preempt those damages actions that impose requirements "in addition to or different from" the requirements imposed by FIFRA. Therefore, even if we assume (without deciding) that a common law damages action imposes a "requirement" under section 136v(b), such a claim is not preempted by FIFRA unless it threatens to impose a requirement "in addition to or different from" those requirements imposed by FIFRA. Kimmel's claim for intentional interference with prospective economic advantage imposes no such requirement and therefore falls outside the preemptive scope of FIFRA.

Our conclusion is compelled by the Supreme Court's holding in *Medtronic.* In *Medtronic,* the plaintiffs argued that even if a state-law damages action is interpreted as imposing a "requirement," the state action is not preempted unless it threatens to impose a requirement "in addition to or different from" preexisting federal requirements. *Medtronic,* 518 U.S. at 492, 116 S.Ct. 2240. Thus, the plaintiffs main-

tained that to the extent the duties (or requirements) imposed by a state-law cause of action duplicate federal requirements, they are not preempted. The Supreme Court agreed with the plaintiffs, offering the following analysis supporting its conclusion:

> The Lohrs next suggest that even if "requirements" exist with respect to the manufacturing and labeling of the pacemaker, and even if we can also consider state law to impose a "requirement" under the Act, the state requirement is not pre-empted unless it is "different from, or in addition to," the federal requirement. § 360k(a)(1). Although the precise contours of their theory of recovery have not yet been defined (the pre-emption issue was decided on the basis of the pleadings), *it is clear that the Lohrs' allegations may include claims that Medtronic has ... violated FDA regulations. At least these claims, they suggest, can be maintained without being pre-empted by § 360k, and we agree. Nothing in § 360k denies Florida the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements.* Even if it may be necessary as a matter of Florida law to prove that those violations were the result of negligent conduct, or that they created an unreasonable hazard for users of the product, such additional elements of the state-law cause of action would make the state requirements narrower, not broader, than the federal requirement. While such a narrower requirement might be "different from" the federal rules in a literal sense, such a difference would surely provide a strange reason for finding pre-emption of a state rule insofar as it duplicates the federal rule. *The presence of a damages remedy does not amount to the additional or different "requirement" that is necessary under the statute; rather, it merely provides*

> *another reason for manufacturers to comply with identical existing "requirements" under federal law.*

Medtronic, 518 U.S. at 494–95, 116 S.Ct. 2240 (emphasis added).

Justice O'Connor, dissenting in part in *Medtronic*, agreed wholeheartedly with the plurality's interpretation of the "different from, or in addition to" language in the MDA, offering the following supplemental logic supporting the plurality's conclusion:

> I also agree that the Lohrs' claims are not pre-empted by § 360k *to the extent that they seek damages for Medtronic's alleged violation of federal requirements. Where a state cause of action seeks to enforce an FDCA requirement, that claim does not impose a requirement that is "different from, or in addition to," requirements under federal law.* To be sure the threat of a damages remedy will give manufacturers an *additional* cause to comply, but the requirements imposed on them under state and federal law do not differ. *Section 360k does not preclude States from imposing different or additional remedies,* but only different or additional *requirements.*

*Id.* at 513, 116 S.Ct. 2240 (emphasis added) (O'Connor, J., dissenting).

This rationale is on all fours with the case before us. Crucially, Kimmel does not claim that DowElanco failed to make disclosures or warnings on its pesticide labels in addition to those required by FIFRA. Nor does Kimmel suggest that the manner in which DowElanco labels its pesticides should be scrutinized under a standard different than those set forth in FIFRA. Rather, Kimmel bases its state damages claim on DowElanco's alleged purposeful submission of false information to the EPA in an attempt to interfere with Kimmel's prospective business relationships. The duty Kimmel would impose—

that is, the duty to refrain from knowingly submitting falsehoods in pesticide labeling applications—undeniably "parallels [the] federal requirements," *Medtronic,* 518 U.S. at 494, 116 S.Ct. 2240, imposed by FIFRA. In particular, this duty mirrors the requirements imposed by sections 136j(a)(2)(M) and 136(a)(2)(Q) of FIFRA, which state:

> (2) *It shall be unlawful for any person-*
> (M) *to knowingly falsify all or part of any application for registration,* application for experimental use permit, any information submitted to the Administrator pursuant to section 136e of this title, any records required to be maintained pursuant to this subchapter, any report filed under this subchapter, or any information marked as confidential and submitted to the Administrator under any provision of this subchapter;
>
> . . .
>
> (Q) *to falsify all or part of any information relating to the testing of any pesticide . . . including* the nature of any . . . equipment used, *observation made, or conclusion or opinion formed.*

7 U.S.C. §§ 136j(a)(2)(M), 136j(a)(2)(Q) (emphasis added). Therefore, the legal duty forming the basis of Kimmel's claim is not "in addition to or different from" the federal requirements under §§ 136j(a)(2)(M) and 136j(a)(2)(Q). Instead, the duty imposed by Kimmel's state law claim against DowElanco "merely duplicates" the preexisting requirements of FIFRA.

Furthermore, Kimmel's state damages claim against DowElanco does not impinge upon Congress's intent that FIFRA provide uniform labeling standards for pesticides. As stated by the Supreme Court in *Cipollone,* "[s]tate-law prohibitions on false statements of material fact do not create 'diverse, nonuniform, and confusing' standards. *Unlike state-law obligations concerning the warning necessary to render a* product 'reasonably safe,' state-law proscriptions on intentional fraud rely on only on a single, uniform standard: falsity." *Cipollone,* 505 U.S. at 529, 112 S.Ct. 2608 (emphasis added).

DowElanco argues that Congress's empowerment of the EPA to impose civil and criminal penalties against individuals or companies submitting false information to the EPA for purposes of pesticide regulation precludes state courts from imposing additional penalties for such misconduct. This contention ignores the teachings of the Supreme Court. Both the plurality and the dissent in *Medtronic* suggest that FIFRA's prohibition on the submission of false information to the EPA can be enforced *both* by the EPA *and* by individual plaintiffs asserting common law damages claims. The plurality in *Medtronic* held that "[t]he presence of a damages remedy does not amount to the additional or different 'requirement' that is necessary under the statute; rather, it merely provides *another* reason for manufacturers to comply with identical existing 'requirements' under federal law." *Medtronic,* 518 U.S. at 495, 116 S.Ct. 2240 (emphasis added). The dissent in *Medtronic* followed suit by noting that "the threat of a damages remedy will give manufacturers an *additional* cause to comply" with federal requirements, and that precluding a State from imposing different or additional requirements does not prohibit states from "imposing different *or additional remedies.*" *Id.* at 513, 116 S.Ct. 2240 (emphasis added) (O'Connor, J., dissenting). Thus, both the plurality and the dissent in *Medtronic* indicate that the EPA's enforcement powers under FIFRA do not abridge Kimmel's ability to pursue state remedies for damages resulting from DowElanco's alleged intentional submission of false information to the EPA.

## CONCLUSION

In conclusion, even if Kimmel's claim for intentional interference with a prospective economic advantage is deemed to impose a "requirement" under section 136v(b), it does not impose a requirement "in addition to or different from" the requirements imposed by FIFRA. We therefore AFFIRM the district court's dismissal of Kimmel's claim for injunctive relief under California Business and Profession Code § 17200, but REVERSE the district court's dismissal of Kimmel's damages claim for intentional interference with a prospective economic advantage and REMAND for further proceedings. The parties shall bear their own costs of this appeal.