Ken G. SWEAT; Sandra Bahr; David Matusow; Julie Sherman, Plaintiffs,

v.

Jane D. HULL, in her capacity as Governor of Arizona; Jacqueline E. Schafer, in her capacity as Director of the Arizona Department of Environmental Quality; the Arizona Department of Environmental Quality; the State of Arizona, Defendants.

No. 00–CV–1680.

United States District Court, D. Arizona.

Sept. 12, 2001.

Timothy Michael Hogan, Joy E. Herr–Cardillo, Arizona Center for Law In The Public Interest, Tucson, AZ, for Plaintiffs.

Steven J. Burr, Office of the Attorney General, Phoenix, AZ, for Defendants.

**ORDER**

SILVER, District Judge.

Pending before the Court are Plaintiffs' Motion for Summary Judgment and Defendants' Motion to Dismiss for lack of subject matter jurisdiction. Having considered the arguments and evidence offered by the parties in their pleadings and at oral argument, the Court will grant Plaintiffs' Motion for Summary Judgment and deny both of Defendants' Motions.

### Background

On August 31, 2000, Plaintiffs filed a Complaint against Defendant Jane Hull ("Hull"), in her capacity as Governor of the State of Arizona, and Defendant Jacqueline Schafer ("Schafer"), in her capacity as Director of the Arizona Department of Environmental Quality ("ADEQ").[1] Plaintiffs, residents of Maricopa County, Arizona, seek to enforce the requirements of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401–7627. (Compl.¶¶ 1, 5.)

Pursuant to the CAA, the Environmental Protection Agency ("EPA") has established national ambient air quality standards ("NAAQS") for carbon monoxide and ozone as pollution limits in order to protect the public health and welfare. (Compl. ¶ 8; Answer ¶ 8.) Under the CAA, states are required to submit a state implementation plan ("SIP") to provide for the attainment of the NAAQS. (Compl. ¶ 9; Answer ¶ 9.) The EPA reviews the proposed SIPs, and approved SIPs become federally enforceable. (Compl. ¶¶ 10–11; Answer ¶¶ 10–11.)

In 1993, the state of Arizona submitted a SIP proposal ("1993 SIP") to the EPA, which was later revised. (Pl.St. Facts ¶ 18; Def.St. Facts ¶ 6.) In May 1995, the EPA approved the 1993 SIP proposal.

---

1. In the Complaint, Plaintiffs also named ADEQ and the State of Arizona as Defendants. On January 4, 2001, the Court granted a stipulation by the parties and dismissed ADEQ and the State of Arizona as to this action. Hull and Schafer are the only remaining Defendants in this action.

(Pl.St. Facts ¶ 19; Def.St. Facts ¶ 9.) The approved SIP created an Enhanced Vehicle Inspection Maintenance Program ("I/M Program"), which required emissions tests for gasoline powered automobiles and a "purge and pressure" test. (1993 SIP at 2–8.) The I/M program also included a Random On–Road Testing Program ("RSD Program"), which provided for the identification of excess vehicle emissions through the use of a remote sensing device. (Pl.St. Facts ¶ 46; Def.St. Facts ¶¶ 11–12; 1993 SIP at 2–12.) The Arizona Legislature codified the RSD Program in A.R.S. § 49–542.01. (Pl.St. Facts ¶ 48.) When the EPA approved Arizona's 1993 SIP in May 1995, the RSD Program became enforceable as a matter of federal law.[2] (Compl. ¶ 22; Answer ¶ 22.)

Beginning in 1998, ADEQ, Arizona's agency responsible for air pollution control under the CAA, began to question the effectiveness of the RSD Program. ADEQ found that "of vehicles that were subject to off-cycle testing as a result of remote sensing and that were not repaired ahead of time, 35 percent passed the test at the inspection station." (Def.St. Facts ¶ 18.) Further, ADEQ calculated that the cost for each high-emitting vehicle identified by the RSD Program was $323.82, and that the RSD Program cost $914,736 annu-

ally. (Id. ¶ 21; Wrona Nov. 13, 1999 Letter at 1.)

In 2000, the Arizona Legislature amended House Bill 2104 and repealed A.R.S. § 49–542.01, which effectively terminated the previously approved RSD Program. (Compl. ¶ 23; Answer ¶ 23.) Hull signed House Bill 2104 into law on April 28, 2000, and it became effective on July 17, 2000. (Compl. ¶ 24; Answer ¶ 24.) As a result, ADEQ terminated the RSD Program. (Pl. St. Facts ¶ 56.)

On June 6, 2000, Plaintiffs sent a Notice of Intent to Sue, pursuant to 42 U.S.C § 7604(b), to Hull, Schafer, and Carol Browner, Administrator of the EPA. (June 6, 2000 Notice.)

On August 31, 2000, Plaintiffs filed a Complaint alleging that by repealing Arizona's RSD Program, Hull and Schafer ("Defendants"), violated the emission standards of the CAA.[3] (Compl. ¶ 26.) Plaintiffs argue that "an approved SIP remains fully in force and effect unless and until a SIP revision is submitted to and approved by EPA." (Pl. Reply at 2.) Plaintiffs request the Court to direct Defendants to "comply with its I/M commitments under the SIP pursuant to § 7604(a)(1)" and to "fully implement its commitment to administer the RSD Program as required by the I/M SIP Revision."[4] (Compl. ¶ 27; at 5

2. Defendants assert that at the time Arizona submitted the 1993 SIP to the EPA, federal regulations required that on-road testing programs include the authority to mandate "off-cycle" inspections and repairs, and that on July 24, 2000, the EPA adopted an amendment which made this requirement discretionary, rather than mandatory. (Def.St. Facts ¶¶ 12–15.)

3. Plaintiffs allege that Schafer "is responsible for the direction, operation and control of ADEQ." (Compl. ¶ 6.) Pursuant to A.R.S. § 49–404, the director of ADEQ "shall maintain a state implementation plan that provides for implementation, maintenance and enforcement of national ambient air quality

standards and protection of visibility as required by the clean air act."

4. Title 42 U.S.C. § 7604(a)(1) provides in relevant part:

[A]ny person may commence a civil action on his own behalf—
(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency *to the extent permitted by the Eleventh Amendment to the Constitution*) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter[.]
42 U.S.C. § 7604(a)(1) (emphasis added).

¶ 1.) Plaintiffs also seek "costs of litigation, including reasonable attorney fees" and "such other relief as the court deems just and proper." (*Id.*)

Plaintiffs filed a Motion for Summary Judgment on January 17, 2001, and on February 20, 2001, Defendants filed a combined Response and Cross–Motion to Dismiss or for Summary Judgment ("Response"). On March 12, 2001, Plaintiffs filed a combined Reply in Support of their Motion for Summary Judgment and a Response to Defendants' Cross–Motion ("Reply"). On August 3, 2001, the Court held oral argument and advised the parties that they were permitted to file supplemental briefing on the Eleventh Amendment issue. Both parties filed Supplemental Memoranda on August 10, 2001.

### Discussion

### I. Legal Standard for Motion for Summary Judgment

Plaintiffs filed a Motion for Summary Judgment with a Statement of Facts. Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction and for Summary Judgment attaching a Statement of Facts.

A motion for summary judgment may be granted if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The initial burden for identifying the elements of the claim in the pleadings, depositions, answers to interrogatories, affidavits, and other evidence, which the moving party "believes demonstrates the absence of a genuine issue of

material fact," is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id.* at 257, 106 S.Ct. 2505. The Court views the evidence in the light most favorable to the nonmoving party and draws any reasonable inferences in the nonmoving party's favor. *Warren v. City of Carlsbad,* 58 F.3d 439, 443 (9th Cir. 1995), *cert. denied.* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

### II. Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction[5]

In their Motion to Dismiss, Defendants argue that the Eleventh Amendment of the United States Constitution bars Plaintiffs' claims. (Mot. Dismiss at 2.) Plaintiffs, however, contend that the Eleventh Amendment does not preclude this action, because the *Ex Parte Young* exception "was developed precisely for situations like the one presented here." (Reply at 5.) Thus, the issue before the Court is whether Plaintiffs' request for injunctive relief falls within the *Ex Parte Young* exception.

#### A. Eleventh Amendment Immunity

The Eleventh Amendment provides:

---

**5.** When considering a motion to dismiss for lack of subject matter jurisdiction, brought pursuant to Fed.R.Civ.P. 12(b)(1), the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States,* 850 F.2d 558, 560

(9th Cir.1988) (citing *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1379 (9th Cir.1983)), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). For the purposes of Defendants' Motion to Dismiss, the Court will consider the admissible evidence offered by the parties.

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The Eleventh Amendment ... prohibits federal courts from hearing suits brought by private citizens against state governments, without the state's consent." *Natural Res. Defense Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 420 (9th Cir.1996) ("*NRDC*") (citing *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). "The Eleventh Amendment [also] bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citations omitted). "The state is the real party in interest when the judgment would tap the state's treasury or restrain or compel government action." *Almond Hill Sch. v. United States Dep't. of Agric.*, 768 F.2d 1030, 1033 (9th Cir. 1985) (citing *Pennhurst*, 465 U.S. at 101, 104 S.Ct. 900). "[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Pennhurst*, 465 U.S. at 101, 104 S.Ct. 900 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963)).

Plaintiffs have sued Defendants in their official capacities only, and have not attempted to evade the Eleventh Amendment by suing Defendants in their individual capacities, or by asserting that the State of Arizona is not the real party in interest. Plaintiffs argue that even though the state of Arizona is the real party in interest, because they seek only injunctive relief, "the Eleventh Amendment does not preclude this action." (*See* Compl.; Mot. Summ.J. at 11.) *See also Pennhurst*, 465 U.S. at 101, 104 S.Ct. 900.

## B. The *Ex parte Young* Exception to Eleventh Amendment Immunity

### 1. Governing Legal Principles

In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court created an exception to a state official's Eleventh Amendment immunity in suits "challenging the constitutionality of a state official's action[.]" *Pennhurst*, 465 U.S. at 101, 104 S.Ct. 900. The *Ex parte Young* exception to the Eleventh Amendment provides that "when a plaintiff brings suit against a state official alleging a violation of federal law, the federal court may award prospective injunctive relief that governs the official's future conduct[.]" *NRDC*, 96 F.3d at 422. The rationale behind this exception is that a state cannot authorize unconstitutional actions and state actors are therefore "stripped of [their] official or representative character and are subjected to the consequences of [their] official conduct." *Pennhurst*, 465 U.S. at 102, 104 S.Ct. 900 (quoting *Ex parte Young*, 209 U.S. at 160, 28 S.Ct. 441). Because the purpose of this exception is "to permit federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States," the exception has been held to apply to federal statutes as well.[6] *NRDC*, 96 F.3d at 421.

The Supreme Court, however, has defined certain limits to the *Ex parte Young* exception, including the requirement that "a 'special relation' between the state officer sued and the challenged statute" exist. *Gilmore*, 252 F.3d at 330 (citing *Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441). The

---

**6.** Defendants acknowledge that the *Ex parte Young* exception applies to violations of federal statutory law as well as constitutional violations. (Resp. at 7 n. 2.)

Ninth Circuit recently addressed this qualification and stated:

> In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional *it is plain that such officer must have some connection with the enforcement of the act,* or else it is making him a party as a representative of the State, and thereby attempting to make the State a party.

*Confederated Tribes & Bands of Yakama Indian Nation v. Locke,* 176 F.3d 467, 469 (9th Cir.1999) (citing *Ex parte Young,* 209 U.S. at 157, 28 S.Ct. 441) (emphasis added); *see also Snoeck v. Brussa,* 153 F.3d 984, 986 (9th Cir.1998) ("That connection must be determined under state law depending on whether and under what circumstances a particular defendant has a connection with the challenged state law.").

An official's general authority to enforce the laws of a state " 'is not sufficient to make government officials the proper parties to litigation challenging the law.' " *Waste Mgmt. Holdings, Inc. v. Gilmore III,* 252 F.3d 316, 331 (4th Cir.2001) (quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters,* 92 F.3d 1412, 1416 (6th Cir.1996), *cert. denied,* 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 217 (1997)); *Ex parte Young,* 209 U.S. at 157, 28 S.Ct. 441; *see also Snoeck,* 153 F.3d at 986 ("That necessary 'connection' ... 'must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.' ") (quoting *Los Angeles County Bar Ass'n v. Eu,* 979 F.2d 697, 704 (9th Cir.1992)); *Okpalobi v. Foster,* 244 F.3d 405, 416 (5th Cir.2001) ("[T]he *Young* principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required 'connection,' but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."); *Shell Oil Co. v. Noel,* 608 F.2d 208, 211 (1st Cir.1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute.") (citation omitted); *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1342 (11th Cir.1999) ("[F]ederal courts have refused to apply *Ex parte Young* where the officer who is charged has no authority to enforce the challenged statute.") (citations omitted), *cert. denied,* 529 U.S. 1012, 120 S.Ct. 1287, 146 L.Ed.2d 233 (2000).[7]

The Supreme Court has recently addressed the scope of *Ex Parte Young* in two cases, further clarifying its exceptional nature. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 71, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (requiring that courts to hesitate before imposing the *Ex parte Young* exception when "Congress has prescribed a detailed remedial scheme for the enforcement against a state of a statutorily created right[.]")[8]; *Idaho v.*

---

**7.** In their Motion for Summary Judgment, Plaintiffs' allege that Hull has a sufficient connection with enforcing the 1995 SIP because of her general duty to execute the laws of Arizona. Plaintiffs argue that Hull, as Governor of Arizona, "has a state constitutional duty to faithfully execute" both state and federal law under the Arizona and United States Constitutions. (*See* Mot.Summ.J. at 10.) Perhaps, recognizing the frailty of this argument, in their Reply Plaintiffs cite A.R.S. § 49–102(B) to establish Hull's legal connection to the implementation and enforcement of Arizona's SIP, which provides that "[t]he governor shall appoint a director of environmental quality ... [who] shall administer the department and serve at the pleasure of the governor." (Reply at 7.)

**8.** In *Seminole Tribe,* the Supreme Court found that Congress did not intend to authorize federal jurisdiction under *Ex parte Young* in an action involving the Indian Gaming Regulatory Act ("IGRA"). *Seminole Tribe,* 517 U.S. at 75 n. 17, 116 S.Ct. 1114. The court, however, expressly stated that its holding did not

*Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 286, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (holding that the *Ex parte Young* exception did not apply when a plaintiff's action, equivalent to a quiet title action blocking the state from controlling submerged lands, implicated special sovereignty interests). Despite these limitations, "the [Supreme] Court has made it clear that it does not 'question the continuing validity of the *Ex Parte Young* doctrine.'" [9] *Hardin,* 223 F.3d at 1047.

### 2. Whether Directing Schafer and Hull to Implement the EPA-approved SIP Violates the Eleventh Amendment

In the Complaint, Plaintiffs request the Court to issue an Order directing Schafer and Hull to comply with Arizona's CAA commitments by implementing the EPA-approved SIP. (Compl. ¶ 27, at 5 ¶ 1.) The issue before the Court is whether directing Schafer and Hull to implement the SIP, which was partially repealed under Arizona law, violates the Eleventh Amendment.

mean that "Congress cannot authorize federal jurisdiction under *Ex parte Young* over a cause of action with a limited remedial scheme." *Id.* The Court then stated that the IGRA stood in contrast to other statutes "where lower courts have found that Congress implicitly authorized suit under *Ex parte Young,*" including the Clean Water Act ("CWA"). *Id.* Because the CWA's citizen suit provision is identical to the CAA's citizen suit provision, *Seminole Tribe* does not support the position that Congress did not intend to authorize federal jurisdiction over an action brought pursuant to the CAA. *See* 33 U.S.C. § 1365(a) (CWA citizen suit provision); 42 U.S.C. § 7604(a)(1) (CAA citizen suit provision); *Cox v. City of Dallas, Tex.,* 256 F.3d 281, 308–09 (5th Cir.2001) ("In *Seminole Tribe* itself, the Court differentiated between the IGRA and statutes such as the Clean Water Act."); *NRDC,* 96 F.3d at 424 ("The statute at issue in the current dispute, the Clean Water Act, is distinguishable from IGRA, as the Supreme court noted in *Seminole Tribe.*").

### a. The CAA Statutory Framework

The parties do not dispute that in May 1995, the EPA approved Arizona's proposed SIP, which created the RSD Program at issue. (Pl.St. Facts ¶ 19; Def.St. Facts ¶ 9.) The parties also do not dispute that when the EPA approved Arizona's SIP, the RSD Program became enforceable as a matter of federal law. (Compl. ¶ 22; Answer ¶ 22.)

Under the CAA, states are responsible for implementing and maintaining SIPs that have been approved by the EPA. Title 42 U.S.C. § 7407(a) provides:

Each State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State by submitting an implementation plan for such State which will specify the manner in which national primary and secondary ambient air quality standards will be achieved and maintained within each air quality control region in such State.

42 U.S.C. § 7407(a). The CAA also requires states to provide "necessary assur-

9. In *Coeur d'Alene,* the Supreme Court stated:

To interpret *Ex Parte Young* to permit a federal court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle ... that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction.

*Id.* at 270, 117 S.Ct. 2028. The Ninth Circuit recognized that "*the Coeur d'Alene* decision reflects divergent views among the Justices as to the nature and scope of the [*Ex parte*] *Young* doctrine." *Agua Caliente Band of Cahuilla Indians v. Hardin,* 223 F.3d 1041, 1046 (9th Cir.2000), *cert. denied,* 532 U.S. 958, 121 S.Ct. 1485, 149 L.Ed.2d 373 (2001). "*Coeur d'Alene* addressed a unique, narrow exception[.]" *Id.* at 1047.

ances" "that the State ... will have adequate personnel, funding, and authority under State (and, as appropriate, local) law to carry out such implementation plan (*and is not prohibited by any provision of Federal or State law from carrying out such implementation plan or portion thereof*)[.]" 42 U.S.C. § 7410(a)(2)(E) (emphasis added). Further, states are not precluded from enforcing "any standard or limitation respecting emissions of air pollutants ... *except that if an emission standard or limitation is in effect under an applicable implementation plan ... such State or political subdivision may not adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation under such plan or section.*" 42 U.S.C. § 7416 (emphasis added).

Defendants have not provided admissible evidence establishing that Arizona's SIP is not "less stringent" without the RSD Program. *Id.* Defendants have also failed to offer any legal authority interpreting § 7416 in a way consistent with their overall position. Instead, Defendants argue that the CAA does not "require states to obtain EPA clearance before changing or repealing statutes or rules that are included in approved SIPs." (Resp. at 11.) As authority for this argument, Defendants cite to 42 U.S.C. § 7410(1)[10] for the proposition that states must first "adopt" and then submit SIP revisions to the EPA for approval. (*Id.* at 12.)

Further, while Defendants do not dispute that the RSD Program was part of Arizona's approved SIP, they argue that at the time Arizona submitted its proposed SIP to the EPA, the state was not required to adopt an "enhanced I/M program" in order to satisfy the CAA. (Def.St.

Facts ¶¶ 7–9, 11–12.) Defendants also assert that while the EPA once required states to conduct on-road testing of vehicles, "[a]fter amendments adopted last year to give the states greater flexibility in implementing I/M programs, that element is no longer mandatory." (Resp. at 4.) Defendants offer evidence that on July 24, 2000, the EPA adopted an amendment to its I/M regulations and assert that the Phoenix area remains in compliance with NAAQS standards. (Def.St. Facts ¶¶ 14–15, 32.)

In opposition to these arguments, Plaintiffs cite *Gen. Motors Corp. v. United States,* 496 U.S. 530, 110 S.Ct. 2528, 110 L.Ed.2d 480 (1990) and *United States v. Ford Motor Co.,* 814 F.2d 1099 (6th Cir. 1987), *cert. denied,* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987). In *Gen. Motors,* the Supreme Court addressed whether a state was required to enforce a SIP even though it had filed a proposed revision to the SIP with the EPA. Massachusetts approved a revision to its SIP and submitted the proposal to the EPA in 1985. The Supreme Court stated that "[t]he language of the Clean Air Act plainly states that EPA may bring an action for penalties or injunctive relief whenever a person is in violation of any requirement of an 'applicable implementation plan.'" *Gen. Motors,* 496 U.S. at 540, 110 S.Ct. 2528 (citations omitted). Concomitantly, the court found that the existing SIP constituted an "applicable implementation plan," even though the state had submitted a proposed revision to the EPA. *Id.* The Supreme Court held: "Both this Court and the Courts of Appeals have recognized that the approved SIP is the applicable implementation plan during the time a SIP revision proposal is pending." *Id.; see also Coalition for*

---

**10.** Title 42 U.S.C. § 7410(1) provides that "[e]ach revision to an implementation plan submitted by a State under this chapter shall be adopted by such State after reasonable notice and public hearing."

*Clean Air. Inc. v. United States Dist. Ct. for the Central Dist. of Cal.*, No. CV97–6916, 1999 U.S.Dist. LEXIS 16106, at *5 (C.D.Cal. Aug. 27, 1999) ("[O]nce the EPA approves a SIP, the state is required to comply with it unless and until a replacement SIP is formally approved.") (citing 42 U.S.C. § 7410(a)(3); *Friends of the Earth v. Carey*, 535 F.2d 165 (2d Cir.1976), *cert. denied*, 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977)).

*Ford* also supports Plaintiffs' position that a state is without power to alter or repeal a SIP without EPA approval. In *Ford*, the plaintiff questioned whether the state of Michigan's SIP, which was approved by the EPA in 1980, was enforceable. In a state court action, the plaintiff negotiated a consent judgment with the Michigan Air Pollution Commission, the Michigan Natural Resources Commission, and the Michigan Department of Natural Resources to enjoin them from enforcing the SIP. *Ford*, 814 F.2d at 1101. In a separate federal court proceeding brought by the United States to enforce the SIP, the plaintiff sought summary judgment because the EPA-approved SIP provision "could not be enforced because the state court consent judgment had invalidated it." *Id.* The district court granted the plaintiff's motion and dismissed the federal action. On appeal, the Sixth Circuit found that state air pollution regulatory authorities and the state court did not possess the power to vacate a state's SIP. The court

stated that "invalidation of an EPA-approved SIP may only occur in the federal appellate courts . . . and revisions and variances of properly promulgated SIPs require EPA approval." *Id.* at 1103. The Sixth Circuit therefore reversed the district court's order and held that "Congress . . . has given EPA the final authority to approve revisions of EPA-approved SIPs. State courts thus lack the authority to invalidate EPA-approved SIPs on infeasibility grounds." *Id.*

■ Defendants' argument that the CAA does not require states to obtain EPA clearance before repealing and not enforcing provisions included in an approved SIP is directly contrary to *Gen. Motors* and *Ford*, which clearly provide that a state's SIP remains enforceable during the time a revision proposal is pending and that the EPA has "final authority to approve revisions of EPA-approved SIPs." *Gen. Motors*, 496 U.S. at 540, 110 S.Ct. 2528; *Ford*, 814 F.2d at 1103. Further, even if the EPA's amendment lowered the standards for enforcing SIPs and the Phoenix area remained in general compliance with NAAQS standards, ADEQ was required under the CAA to implement its RSD Program until the EPA approved any revision.[11] *Gen. Motors*, 496 U.S. at 540, 110 S.Ct. 2528; *Ford*, 814 F.2d at 1103.

Plaintiffs have persuaded the Court that the repeal and subsequent non-enforcement of the RSD Program violated the

---

11. Defendants argue that their failure to implement the RSD Program does not constitute a violation of the CAA, because if ADEQ "is successful in beginning the study of alternatives during 2001, there will be no gap in the state's compliance with EPA's minimum requirements for remote sensing." (Resp. at 12.) Defendants offer evidence that the "same legislation that repealed the [RSD Program] gave ADEQ the authority and funding to conduct a research study to evaluate the feasibility and effectiveness of methods to improve the monitoring of the performance

of in-use emissions control systems." (Def.St. Facts ¶ 28.) This evidence, however, is speculative and not sufficient to support Defendants' position, because it does not affirmatively establish that repealing the RSD Program does not make the SIP "less stringent." 42 U.S.C. § 7416. Further, again even if ADEQ is conducting a study to improve the RSD Program, ADEQ is required to implement the approved RSD Program until the EPA approves any revision. *Gen. Motors*, 496 U.S. at 540, 110 S.Ct. 2528; *Ford*, 814 F.2d at 1103.

CAA, because it altered the SIP approved by the EPA in 1995. Defendants have failed to create a genuine issue of material fact regarding this legal proposition. Also, Plaintiffs have persuaded the Court that they may properly bring this action to enforce the SIP. In *Coalition for Clean Air, Inc. v. Unites States District Court for the Central Dist. of Cal.*, No. CV97–6916, 1999 U.S.Dist. LEXIS 16106 (C.D.Cal. Aug. 27, 1999), the South Coast Air Quality Management District ("SCAQMD") adopted a SIP which was subsequently approved by the EPA. When the SCAQMD began creating statutory regulations for applying the approved SIP, it unilaterally determined that such measures were inappropriate and therefore decided not to implement several of the SIP's provisions. The plaintiffs, two citizens groups, brought suit against SCAQMD, pursuant to 42 U.S.C. § 7604, to enforce the provisions of the SIP. Analyzing the CAA, the district court found that the CAA created a "federal-state partnership," and that "once the EPA approves a SIP, the state is required to comply with it unless and until a replacement SIP is formally approved." *Id.* at \*5 (citing 42 U.S.C. § 7410(a)(3); *Friends of the Earth*, 535 F.2d 165). The court ultimately held that because the SCAQMD did not enforce several of the state's SIP requirements, the court was required under the CAA to issue an injunction to compel compliance with the SIP. *Id.* at \*8 (citing 42 U.S.C. § 7410(a)(3); *Friends*, 535 F.2d 165); *see also* 42 U.S.C. § 7604(a)(1) ("[A]ny person

may commence a civil action ... against ... any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution[ ] who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of ... an emission standard or limitation under this chapter[.]"); *McCarthy v. Thomas*, 27 F.3d 1363, 1365 (9th Cir.1994) ("A ... SIP, designed to remedy a nonattainment problem, is *enforceable* in federal court against a state by (1) the EPA or (2) a citizen to the extent permitted by the Eleventh Amendment.") (emphasis added); *Friends of the Earth*, 535 F.2d at 172 (stating that when Congress enacted the CAA's citizen suit provision, it "made clear that citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests.").[12]

Thus, the Court finds, as a matter of law, that the repeal of the RSD Program, and in turn Arizona's subsequent non-enforcement of the EPA-approved SIP, constituted a violation of federal law. *See* 42 U.S.C. § 7416; *NRDC*, 96 F.3d at 422.

### 3. Whether Hull and Schafer Have "Some Connection" to the Enforcement of the SIP

Whether Plaintiffs may bring this action for prospective injunctive relief against Defendants under *Ex parte Young* also depends upon whether Hull and Schafer, the remaining Defendants in this action,

---

**12.** Defendants argue that Plaintiffs cannot use the CAA's citizen suit provision to enforce the SIP because based on the other remedial provisions in the CAA, "Congress obviously intended to afford the states adequate time to cure deficiencies in their [CAA] programs. Allowing this suit to proceed would frustrate that intent." (Resp. at 12–13.) Defendants' argument is unconvincing, because not only has Defendant failed to offer any legal author-

ity in support of this position, Defendant's argument is contrary to the plain language of 42 U.S.C. § 7604(a)(1). *See McCarthy*, 27 F.3d at 1365; *Friends of the Earth*, 535 F.2d at 172; *Delaware Valley Citizens Council v. Davis*, 932 F.2d 256, 267–68 (3d Cir.1991) (stating that 42 U.S.C. § 7604 allowed the district court to consider a citizen suit seeking to "police" a state's compliance with a SIP).

have "some connection" with the enforcement of Arizona's SIP. *Locke,* 176 F.3d 467, 469

### a. Federal Preemption of House Bill 2104

Defendants' Motion to Dismiss is premised on the argument that though they "once had the authority to implement the remote sensing program, the [Arizona] legislature has removed that authority. . . . [Defendants have] only the authority conferred by the Arizona constitution and state statute." (Resp. at 8.) *See Litchfield Elementary Sch. Dist. No. 79 of Maricopa County v. Babbitt,* 125 Ariz. 215, 608 P.2d 792, 797 (1980) ("It is a basic tenet of our system of government that *the governor, or executive, has only such powers as are conferred upon him by our constitution or by validly enacted statute.* The law-making power is vested in the legislature. While the governor is charged with the duty of faithfully executing the laws, and must be accorded powers reasonably commensurate with such a broad responsibility, this is not a source from which the power to make legislative decisions can be created.") (emphasis added) (internal citations omitted).

Plaintiffs argue that because Arizona's SIP (and RSD Program) is enforceable under federal law, House Bill 2104 is preempted by federal law and A.R.S. § 49–542.01 therefore remains a fully enforceable provision under federal law.

Pursuant to the Supremacy Clause of the United States Constitution, "any state law conflicting with federal law is preempted by the federal law and is without effect." *Nathan Kimmel, Inc. v. Dowelanco,* 255 F.3d 1196, 1199 (9th Cir.2001); *In re Cybernetic Servs., Inc.,* 252 F.3d 1039, 1045 (9th Cir.2001) (stating that the Supremacy Clause "invalidates state laws that interfere with, or are contrary to, federal law.") (citations omitted); *Defend-*

*ers of Wildlife v. Hull,* 199 Ariz. 411, 18 P.3d 722 (2001) (stating that pursuant to the Supremacy Clause of the United States Constitution, federal laws supersede conflicting state laws which are "an obstacle to the accomplishment and execution of the full objectives of Congress.") (quoting *State v. McMurry,* 184 Ariz. 447, 909 P.2d 1084, 1086 (1995)).

Under the CAA, the states have the responsibility of making "necessary assurances" that they will successfully implement approved SIPs and that such implementation is not prohibited by any State law. *See* 42 U.S.C. § 7407(a); 42 U.S.C. § 7410(a)(2)(E). The Court has already found that the repeal and subsequent non-enforcement of the RSD Program constituted a violation of the CAA. The Court agrees with Plaintiffs that even though House Bill 2104 repealed Arizona's RSD Program, such provision is ineffective and preempted by federal law. *Nathan,* 255 F.3d at 1199; *Coalition for Clean Air,* 1999 U.S.Dist. LEXIS 16106, at *14 ("In the event of conflict with the CAA, the federal statute prevails.").

Thus, the only question is whether Schafer and Hull have a sufficient connection under the Eleventh Amendment to the enforcement of the 1995 SIP, permitting an Order directing them to comply with the SIP.

### b. Schafer's Eleventh Amendment Immunity

In their Motion to Dismiss, Defendants argue that the Court cannot exercise jurisdiction over Plaintiffs' claims against Schafer, because Plaintiffs do not allege that Schafer has "some duty to enforce the state law at issue." · (Mot. Dismiss at 7.) Defendants assert that Plaintiffs' claim against Schafer "is therefore not only beyond the scope of the [*Ex parte Young*] exception but in conflict with [*Ex parte*

*Young's* ] specific requirement that the official to be enjoined have 'some duty' to enforce the state law at issue." [13] *(Id.)*

Plaintiffs argue that *NRDC* provides mandatory Ninth Circuit precedent that the Eleventh Amendment does not preclude their claims against Schafer or the relief sought. (Mot.Summ.J. at 13.) Plaintiffs assert that like the plaintiffs in *NRDC*, they seek "prospective injunctive relief to compel those state officials responsible for the enforcement of the state implementation plan to adhere to the plan requirements, which have the force and effect of federal law." *(Id.* at 14.)

In *NRDC*, the Ninth Circuit held that the *Ex parte Young* exception applied to the director of the California Department of Transportation ("Caltrans") in a suit against Caltrans and the director brought pursuant to the CWA, 33 U.S.C. § 1365. *NRDC*, 96 F.3d at 424. The CWA "required [Caltrans] to control polluted stormwater runoff from roadways and maintenance yards in California." *Id.* at 420. The plaintiff requested that the court enjoin the director to comply with the CWA by controlling polluted stormwater runoff. *Id.* The issue before the Ninth Circuit was whether the district court correctly held that the director was subject to suit in federal court for violating the CWA. *Id.* at 420.

The Ninth Circuit found that § 1365(a) in the CWA "specified that [Congress] was legislating to the extent permitted by the Eleventh Amendment" and that "Congress intended to encourage and assist the public to participate in enforcing the standards promulgated to reduce water pollution." *Id.* at 423 (citation omitted). The Ninth Circuit further stated that "Congress implicitly intended to authorize citizens to

bring *Ex parte Young* suits against state officials with the *responsibility to comply with the clean water standards and permits." Id.* at 424 (emphasis added). Following this reasoning, the Ninth Circuit affirmed the district court's decision that the Eleventh Amendment did not bar the plaintiffs' suit brought pursuant to the CWA. *Id.*

■ Plaintiffs correctly argue that the *Ex Parte Young* exception applies to Schafer because "[she] is charged with the specific responsibility of implementing the SIP." (Reply at 7.) Pursuant to A.R.S. § 49–404, the director of ADEQ "shall maintain a state implementation plan that provides for implementation, maintenance and enforcement of national ambient air quality standards and protection of visibility as required by the clean air act … [and] shall evaluate and adopt revisions to the plan in conformity with federal regulations and guidelines promulgated by the administrator for those purposes[.]" A.R.S. §§ 49–404(A) and (C). Because Schafer is directly charged with the responsibility of enforcing the 1995 SIP, which includes Arizona's RSD Program, and may only adopt revisions to the SIP in conformity with federal regulations and guidelines, suit is properly brought against Schafer under the *Ex parte Young* exception to the Eleventh Amendment. *NRDC*, 96 F.3d at 424.

### c. Hull's Eleventh Amendment Immunity

Defendants argue that the Eleventh Amendment bars Plaintiffs' claims against Hull because she "never had a connection with the remote sensing program and therefore must be dismissed from this suit

---

**13.** Defendants also assert that though Schafer "once had the authority to implement the [RSD Program], the legislature has removed that authority." *(Id.)* As stated previously,

because House Bill 2014 is preempted by federal law, A.R.S. § 49–542.01, which codified the RSD Program, remains effective as federal law.

under *[Ex parte] Young* and *[Locke]*." (Resp. at 7)

In *Locke*, the Ninth Circuit held that an Indian Tribe could not seek injunctive relief against the Governor of Washington pursuant to the *Ex Parte Young* exception. *Locke*, 176 F.3d at 470. *Locke* involved an action brought by an Indian tribe against the governor of the State of Washington, alleging that the state operated a lottery on an Indian Reservation in violation of the Indian Gaming Regulatory Act ("IGRA"). *Locke*, 176 F.3d at 468. The tribe sought injunctive relief against the governor pursuant to *Ex Parte Young*. *Id.* at 469. When addressing whether the *Ex Parte Young* exception applied, the Ninth Circuit analyzed Washington state law and stated:

> The complaint contains no allegations that the governor is charged with operating the state lottery, and the state statutes governing the lottery suggest why. Those statutes establish the Washington State Lottery as a separate state agency, which is *operated by an independent Commission* whose members are appointed for six-year terms. Wash.Rev.Code §§ 67.70.030, 67.70.040. Among the Commission's duties is the determination of the types of locations at which tickets may be sold. *Id.*, § 67.70.050(1). *Nowhere in n these statutes is there any indication that the governor has the responsibility of operating the state lottery or determining where its tickets will be sold.*

*Id.* at 469–70 (emphasis added). The Ninth Circuit therefore held that the action against the governor was barred by the Eleventh Amendment, because according to Washington state law, he lacked the "requisite connection" with the state's enforcement of the IGRA. *Id.* at 470. The Ninth Circuit further found it inappropriate to apply the *Ex Parte Young* exception to the governor, who was "merely a representative of the state." *Id.* (citation omitted).

In *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir.2001), the Fifth Circuit, sitting en banc, addressed whether the Governor of Louisiana possessed the requisite connection to a state statute to apply the *Ex parte Young* exception. The issue before the court was whether *Ex parte Young* requires state officials to have "some enforcement powers with respect to the particular statute at issue, or whether the official need have no such enforcement powers and only need be charged with the general authority and responsibility to see that all of the laws of the state be faithfully executed." *Id.* at 416. The Fifth Circuit found that a previous panel erred in holding that the Eleventh Amendment did not bar a case against the governor because "a mere duty to uphold the laws of the state is sufficient under *Young* to authorize an Eleventh Amendment waiver." *Id.* at 417. The court therefore held that pursuant to *Ex parte Young*, a "general charge of the governor ... to implement and enforce all of the laws of the state" is insufficient and that a governor's enforcement power may be found "elsewhere in the laws of the state, apart from the challenged statute, so long as those duties have the same effect as a 'special charge' in the statute." *Id.* at 419.

In *Waste Mgmt. Holdings, Inc. v. Gilmore III*, 252 F.3d 316, 331 (4th Cir.2001), the Fourth Circuit held that claims brought against defendant Gilmore, the Governor of Virginia, were barred by the Eleventh Amendment and that the *Ex Parte Young* exception was inapplicable. *Id.* at 330. The plaintiffs sued the governor, among others, seeking injunctive relief regarding statutes that capped the amount of municipal solid waste that landfills could accept. *Id.* at 323. The governor signed the statutes into law. *Id.* The

defendants argued that the governor should be dismissed pursuant to the Eleventh Amendment, because he had no "enforcement responsibility with respect to the statutory provisions at issue." *Id.* at 330. The Fourth Circuit agreed and found that "although the [governor] is under a general duty to enforce the laws of Virginia by virtue of his position as the top official of the state's executive branch, he lacks a specific duty to enforce the challenged statutes." *Id.* The Fourth Circuit therefore instructed the district court to dismiss the governor as a defendant to the action, because "the purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute is not aided by enjoining the actions of a state official not directly involved in enforcing the subject statute." *Id.*

█ Plaintiffs argue that their claims against Hull are not barred by the Eleventh Amendment, because she "has a state constitutional duty to faithfully execute" both Arizona and federal law. (Mot. Summ.J. at 10.) Plaintiffs also assert that Hull has the requisite connection to the enforcement of the 1995 SIP because she signed House Bill 2104 into law, which repealed Arizona's RSD Program. (Reply at 7.) Plaintiffs' arguments fail, because Hull's general authority to faithfully execute Arizona's laws and her role in signing House Bill 2104 are insufficient to establish that she is specifically charged with enforcing the 1995 SIP. *Locke,* 176 F.3d at 470; *Okpalobi,* 244 F.3d at 419; *Gilmore,* 252 F.3d at 330.

Plaintiffs further argue that Hull has at least "some connection" with enforcing Arizona's SIP by citing to A.R.S. § 49–102(B), which provides that "[t]he governor shall *appoint* a director of environmental quality pursuant to § 38–211 ... [who]

shall administer the department and *serve at the pleasure of the governor.*"[14] A.R.S. § 49–102(B) (emphasis added). However, the relief requested in Plaintiffs' Complaint, that the Court issue an Order directing Hull to enforce Arizona's SIP, does not involve Hull's express duties under A.R.S. § 49–102(B). (*See* Compl. ¶ 27.) Plaintiffs do not request the Court to direct Hull to terminate Schafer for her failure to enforce the SIP, or to appoint a new ADEQ director pursuant to A.R.S. § 49–102. Thus, Plaintiffs have failed to set forth any Arizona statutory authority establishing that Hull has a requisite connection to the relief sought or that Hull has more than a "general authority" to enforce the laws of Arizona. *Gilmore,* 252 F.3d at 330; *Okpalobi,* 244 F.3d at 419; *Ex Parte Young,* 209 U.S. at 157, 28 S.Ct. 441; *see also Smith v. Kitzhaber,* No. CIV 00–326, 2000 WL 621425, at *4 (D.Or. March 6, 2000) (applying *Locke* and *Ex parte Young* and holding that because a governor had "no responsibility" for enforcing the state statute in question, the Eleventh Amendment barred the plaintiffs' claims against him); *Snoeck,* 153 F.3d at 987 (holding that because the party had no direct enforcement powers under the state law in question, it had "no connection to the enforcement of the challenged law as required under *Ex parte Young.*").

Because Plaintiffs have failed to "affirmatively and distinctly" establish that their claims against Hull are not barred by the Eleventh Amendment, the Court must dismiss such claims. *See Tosco Corp. v. Communities for a Better Env't,* 236 F.3d 495, 499 (9th Cir.2001) (" 'A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal

**14.** A.R.S. § 38–211 provides: "When it is provided by law that a state officer shall be appointed pursuant to this section, the gover-nor shall nominate and with the consent of the senate appoint such officer as prescribed in this section."

jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, *must dismiss the case,* unless the defect be corrected by amendment.' ") (emphasis added) (quoting *Smith v. McCullough,* 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682 (1926)).

## C. Plaintiffs' Notice of Claims Argument

Defendants move to dismiss Plaintiffs' Complaint arguing that Plaintiff failed to comply with the CAA's notice provision, which provides that "[n]o action may be commenced ... prior to 60 days after the plaintiff has given notice of the violation ... to the State in which the violation occurs, and ... to any alleged violator[.]" 42 U.S.C. § 7604(b). Defendants argue that Plaintiff's claims should be dismissed pursuant to § 7604(b) for the following reasons: (1) the notice did not expressly state that Hull and Schafer were in violation of CAA emission standards or that their failure to implement the RSD Program constituted a violation; and (2) the notice did not advance Plaintiff's theory that federal law required Defendants to continue implementing the RSD Program, despite its repeal. (Resp. at 9–10.)

The purpose of the notice provision in § 7604(b) is to give the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 59, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (discussing the notice provision in the Clean Water Act, which has identical language to § 7604(b)); *Washington Trout v. McCain Foods, Inc.,* 45 F.3d 1351, 1354 (9th Cir.1995) ("[T]he purpose of giving a sixty-day notice is to allow the parties time to resolve their conflicts in a nonadversarial time period.... [N]otice alerts the appropriate state or federal agency, so administrative action

may initially provide the relief the parties seek before a court must become involved."). The Court need not apply an "excessively restrictive" construction of § 7604(b). *See Friends of the Earth,* 535 F.2d at 175 ("The district court's excessively restrictive construction of the citizen suit notice requirement is completely at odds with the announced purpose of the statute, which looks to substance rather than to form in an effort to facilitate citizen involvement.").

The parties do not dispute that the sufficiency of Plaintiff's notice under § 7604(b) depends upon an application of 40 C.F.R. § 54.3(b), which provides:

> Notices to the Administrator, States, and alleged violators regarding violation of an emission standard or limitation or an order issued with respect to an emission standard or limitation, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name and address of the person giving the notice.

40 C.F.R. § 54.3(b).

On June 6, 2000, Plaintiffs sent a § 7604(b) notice to Hull, Schafer, and Carol Browner, Administrator of the EPA, which provided:

> [W]e hereby notify the above parties that the State of Arizona ... is in violation of 'an emission standard or limitation' under the Clean Air Act ... 42 U.S.C. § 7401 *et seq.* In particular, as further discussed below, the State has failed to implement a requirement of the Arizona [SIP] relating to the use of remote sensing devices in Arizona's enhanced vehicle inspection and mainte-

nance ... program for [Maricopa County].

(June 6, 2000 Notice at 1.)

Defendants argue that Plaintiffs' notice was insufficient because it failed to identify the "person or persons responsible for the alleged violation" and did not name Hull and Schafer specifically. (Resp. at 9.) Defendants assert that the notice merely provided that "the State of Arizona" was in violation of the Clean Air Act, and "never says that the Governor or Director is in violation of an emission standard or limitation or that their failure to implement the remote sensing program ... constitutes a violation." (*Id.*)

■ The Court finds Defendants' argument unconvincing in light of A.R.S. § 49–404, which expressly provides that Schafer, as the director of ADEQ, "shall maintain a state implementation plan that provides for implementation, maintenance and enforcement of national ambient air quality standards and protection of visibility as required by the clean air act." A.R.S. § 49–404(A). Further, A.R.S. § 49–102(B) provides that Schafer must serve "at the pleasure" of Hull. Because Arizona law requires that both Hull and Schafer are expressly responsible for enforcing the provisions of the CAA, Plaintiff's notice that the "State of Arizona" was in violation of the CAA by failing to enforce the RSD Program constituted "sufficient information to permit the recipient to identify the ... person or persons responsible for the alleged violation[.]" 40 C.F.R. § 54.3(b); *Washington Trout*, 45 F.3d at 1354.

Defendants also argue that Plaintiffs' notice "does not advance plaintiffs' present theory that the program's status as federal law imposes an obligation to continue implementing the program despite repeal of the authorizing statute." (Resp. at 10.) Defendants' argument is misguided, because Plaintiffs' notice expressly stated that when the EPA approved Arizona's SIP, the RSD became enforceable under federal law. (June 6, 2000 Notice at 2.) Plaintiffs' notice further provided that when Hull signed House Bill 2104, which repealed Arizona's RSD program, ADEQ canceled the RSD program and therefore violated 42 U.S.C. § 7604. (*Id.*) Plaintiff's notice was therefore sufficient to allow Defendants to identify the "specific standard" which was violated and the actions that caused such violation. 40 C.F.R. § 54.3(b); *Washington Trout*, 45 F.3d at 1354.

Defendants cite *Washington Trout*, in support of their position, in which the Ninth Circuit affirmed a district court's dismissal of an action because the plaintiffs did not sufficiently notify the defendant of their claims pursuant to 33 U.S.C. § 1365(b), the notice provision under the Clean Water Act which contains identical language to § 7604. The Ninth Circuit held that because the plaintiffs' notice did not provide the names of each plaintiff, "neither the EPA nor McCain knew other plaintiffs were involved, they were not in a position to negotiate with the plaintiffs or seek an administrative remedy. This made any sort of resolution between the parties during the notice period an impossibility." *Id.* at 1354–55.

*Washington Trout* is distinguishable because in Plaintiffs' June 6, 2000 Notice, they explicitly set forth the names and addresses of each of the Plaintiffs named in this action. (*See* June 6, 2000 Notice at 3.)

Thus, Defendants' Motion to Dismiss will be denied on this ground.

### D. Plaintiff's Tenth Amendment Argument

Defendants argue that if the Court allows Plaintiffs to compel Hull and Schafer to enforce the RSD Program, which they are no longer authorized to do under state

law, the Court will violate the Tenth Amendment. (Resp. at 13.)

The Tenth Amendment of the United States Constitution provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend X; *see also Printz v. United States,* 521 U.S. 898, 925, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) ("[T]he Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs."); *New York v. United States,* 505 U.S. 144, 161, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) ("Congress may not simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'") (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n. Inc.,* 452 U.S. 264, 288, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)).

In *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), the United States Supreme Court addressed whether Congress may direct states to impose federal regulations. The Supreme Court stated:

> [W]here Congress has the authority to regulate private activity under the Commerce Clause, we have recognized Congress' power to offer States the choice of regulating that activity according to federal standards or having state law pre-empted by federal regulation.... This arrangement, which has been termed 'a program of cooperative federalism,' ... is replicated in numerous federal statutory schemes ... [including] the Clean Water Act[.]

*New York,* 505 U.S. at 167, 112 S.Ct. 2408 (citations omitted). The Supreme Court reasoned that such method of encouraging states to conform to federal policy is permissible because "the residents of the State retain the ultimate decision as to whether or not the State will comply. If a State's state residents would prefer their government to devote its attention and resources to problems other than those deemed important by Congress, they may choose to have the Federal Government rather than the State bear the expense of a federally mandated regulatory program[.]" *New York,* 505 U.S. at 168, 112 S.Ct. 2408.

Like the CWA, the CAA is a "program of cooperative federalism" whereby the federal government offers states "the choice of regulating that activity according to federal standards or having state law pre-empted by federal regulation." *New York,* 505 U.S. at 167, 112 S.Ct. 2408 (analyzing the CWA) (citations omitted); *see also Sierra Club v. EPA,* 252 F.3d 943, 944 (8th Cir.2001) ("The Clean Air Act 'establishes a partnership between EPA and the states for the attainment and maintenance of national air quality goals.'") (quoting *Nat'l Res. Def. Council. Inc. v. Browner,* 57 F.3d 1122, 1123 (D.C.Cir.1995)); *Am. Lung Ass'n of New Jersey v. Kean,* 871 F.2d 319, 322 (3d Cir.1989) ("The [CAA] creates a program of cooperative federalism for achieving cleaner air. The EPA is given the responsibility for setting [NAAQS], which set maximum permissible levels for certain air-borne toxins. It is then up to each state to produce an implementation plan to reduce emissions from pollution sources within the state so that it complies with the NAAQS.") (citations omitted); *Air Pollution Control Dist. of Jefferson County, Ky. v. EPA,* 739 F.2d 1071, 1075 (6th Cir.1984) ("[T]he Clean Air Act has been described as 'a bold experiment in cooperative federalism,' ... the EPA identifies the end to be achieved, while the states choose the particular means for realizing that end.") (citing *Connecticut v. EPA,* 696 F.2d 147, 151 (2d Cir.1982)).

■ The CAA does not compel states to enforce a federal regulatory scheme, but merely gives states the freedom to promulgate and enforce SIPs, which the states themselves initially adopt and subsequently submit to the EPA for approval. *See* 42 U.S.C. § 7410(a)(1) (providing that states have the responsibility to adopt "a plan which provides for implementation, maintenance, and enforcement of such primary standard in each air quality control region (or portion thereof) within such State."). If a state fails to comply with federal SIP requirements, the EPA may promulgate and enforce its own Federal Implementation Plan ("FIP"), or may sanction a nonconforming state by ordering the Secretary of Transportation to withhold highway funds. *See* 42 U.S.C. § 7410(c)(1); § 7509(b). Here, the State of Arizona participated in the CAA by proposing a SIP which was adopted by the EPA in 1995. It is now the director of ADEQ's obligation to enforce the approved SIP, because the Supreme Court has specifically found that such "program of cooperative federalism" is allowed under the Tenth Amendment. *New York*, 505 U.S. at 165, 112 S.Ct. 2408.

Defendants cite *Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), for the proposition that "Congress may not conscript state officials to administer federal regulatory programs." (Resp. at 13.) In *Printz*, the Supreme Court invalidated a provision of the Brady Act, which commanded "state and local law enforcement officers to conduct background checks on prospective handgun purchasers[.]" *Id.* at 902, 117 S.Ct. 2365. The provision in question required the United States Attorney General to establish a national system for instantly checking prospective handgun purchasers' backgrounds and then to command the "chief law enforcement officer" ("CLEO") for each local jurisdiction to "conduct such checks and perform related tasks[.]" *Id.*

at 898, 117 S.Ct. 2365. The Supreme Court found the CLEOs' duties implicitly required them to accept notice of the contents of a "Brady Form, which the firearms dealer is required to provide[.]" *Id.* at 933, 117 S.Ct. 2365. The Supreme Court held that the "mandatory obligation imposed on CLEOs to perform background checks on prospective handgun purchasers" was unconstitutional and set forth the following reasoning:

> We held in *New York* that Congress cannot compel the States to ·enact or enforce a federal regulatory program. Today we hold that Congress cannot circumvent that prohibition by conscripting the State's officers directly. The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program.

*Id.* at 933–35, 117 S.Ct. 2365.

Unlike the mandatory directives of the Brady Act on the CLEOs, the CAA does not directly command state officials to enforce federal regulatory provisions. Rather, the CAA provided the states with the choice of adopting and subsequently regulating a state-created SIP which complied with federal standards, or having state law pre-empted by federal regulation. *New York*, 505 U.S. at 167, 112 S.Ct. 2408. As stated previously, the State of Arizona participated in the CAA by unilaterally proposing its own SIP, which the EPA adopted in 1995. Only after the Arizona's SIP was approved by the EPA did it become federally enforceable. (*See* Compl. ¶¶ 10–11; Answer ¶¶ 10–11.) The Supreme Court has specifically found that such a "program of cooperative federalism" is consistent with Congress' powers under the Tenth Amendment, *Id.* at 165, 112 S.Ct. 2408.

Thus, the Court will deny Defendants' Motion to Dismiss on this ground.

### III. Plaintiff's Motion for Summary Judgment

In opposition to Plaintiff's Motion for Summary Judgment, Defendants argue that the repeal and consequent non-enforcement of the RSD Program did not constitute a violation of the CAA. (*See* Resp. at 10–13.) The Court has previously addressed the legal arguments set forth by Defendants and has found, based on the admissible evidence presented, that the repeal and subsequent non-enforcement of the RSD Program constitutes a violation of the CAA.

The Court also addressed and rejected the evidence Defendants offered in support of their position. Defendants offered evidence that ADEQ has the authority and funding "to conduct a research study to evaluate the feasibility and effectiveness of methods to improve the monitoring of the performance of in-use emissions control systems." [15] (Def.St. Facts ¶ 28.) As stated previously, this evidence is insufficient to create a genuine issue of material fact that Arizona's repeal and subsequent non-enforcement of the RSD Program was not a violation of the CAA.Fed.R.Civ.P. 56(c). The Court also addressed Defendants' evidence that the EPA adopted an amendment to its I/M regulations and that the Phoenix area remained in compliance with the CAA. (Def.St. Facts ¶¶ 14–15, 32.) The Court found that even if these facts are taken as true, they do not create a genuine issue of material fact that there was no violation of the CAA, because ADEQ maintained the express obligation to enforce the RSD Program until the EPA approved its revision. Fed.R.Civ.P. 56(c).

Thus, the Court finds that Defendants have failed to offer sufficient evidence to create a genuine issue of material fact that the repeal and subsequent non-enforcement of the RSD Program constituted a violation of the CAA.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss for lack of subject matter jurisdiction is **GRANTED** in part and **DENIED** in part. [Doc. # 17.] Defendants' Motion is granted with regard to the claims asserted against Defendant Hull and is denied with regard to the claims asserted against Defendant Schafer.

**IT IS FURTHER ORDERED THAT** Defendants' Motion for Summary Judgment it **DENIED**. [Doc. # 17.]

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. [Doc. # 14.] Plaintiffs' Motion for Summary Judgment is granted with regard to the claims asserted against Defendant Schafer and denied on all other grounds.

**IT IS FURTHER ORDERED** that a Status Hearing is set for September 28,

---

**15.** Defendants also assert in their Statement of Facts that because the RSD Program typically evaluates over three million vehicles per year, the RSD Program "did not expire until April 30, 2000 and therefore would have evaluated approximately one million vehicles during calendar year 2000, far more than the minimum required by EPA's requirements." (Def.St. Facts ¶ 27.) This speculative assertion is insufficient to create a genuine issue of material fact because it merely involves the RSD Program's capability and does not explicitly establish how many vehicles were evaluated through April 30, 2000. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986) ("The party opposing summary judgment may not rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial.") (citing *Mosher v. Saalfeld*, 589 F.2d 438, 442 (9th Cir.1978), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979)).

2001 at 11:00 a.m. regarding the implementation of the Court's Order.